```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/30/20
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Brendamarie Alexander,

                Plaintiff,

       –v–

New York City Department of Education, *et al.*,

              Defendants.

---

19-cv-7023 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

Plaintiff Brendamarie Alexander filed this action under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290–97, the New York City Human Rights Law ("NYCHRL"), N.Y. City Admin. Code §§ 8-101–31, and 42 U.S.C. § 1983.  Alexander alleges that Defendants New York City Department of Education ("DOE") and Defendants Cedric Hall and Carmel Macklin discriminated against her on the basis of age and subsequently retaliated against her. Currently before the Court is Defendants' motion to dismiss Plaintiff's First Amended Complaint ("FAC") under Federal Rule of Civil Procedure 12(b)(6).  Dkt. No. 16.

For the following reasons, Defendants' motion to dismiss the Amended Complaint is GRANTED in part and DENIED in part.

## I.    BACKGROUND

The Court first provides the factual and procedural background leading to this motion to dismiss.  For the purpose of evaluating this motion to dismiss, all plausible allegations in the amended complaint are accepted as true, and all reasonable inferences are drawn in Plaintiff's favor. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).

1

### A.  Factual Background

Plaintiff is a 53-year-old art teacher who previously worked for DOE.  FAC ¶¶ 11–12.  In 2015, the Plaintiff was assigned to work at the Eagle Academy for Young Men ("Eagle Academy") in Queens, New York, where she served as a classroom teacher but also performed administrative and supervisory duties, for which she received additional "session pay."  *Id.* ¶¶ 13–16.  Defendant Carmel Macklin, who is younger than 40 years old, became the Interim Acting Assistant Principal of Eagle Academy in June 2016.  *Id.* ¶ 17.  In July 2017, the Plaintiff was accepted to and began attending the Emerging Leaders Program to be trained for supervisory and administrative roles, and in that same month, she was "excessed" (or removed for the purposes of staff reduction) from Eagle Academy by Defendant Macklin.  *Id.* ¶¶ 18–19.  Defendant Cedric Hall, who is also under the age of 40, became Principal of Eagle Academy on August 28, 2017, and he rescinded the excess in September 2017.  *Id.* ¶¶ 17, 21.

Plaintiff alleges that she was stripped of her other administrative and supervisory responsibilities after she returned to Eagle Academy and that these responsibilities were reassigned to teachers like Marjorie Iglio and Taha Alassari, both of whom are under the age of 40.  *Id.* ¶ 26.  Furthermore, Plaintiff alleges that Defendants intentionally made her job more difficult by oversubscribing her classes and refusing to provide the supplies needed to teach an art class; she claims that no teachers under the age of 40 were oversubscribed classes or deprived of necessary supplies and materials.  *Id.* ¶¶ 31–32.  And she claims that a student handbook that she prepared as part of her Masters studies at Bank Street College was distributed to the school by Macklin and another teacher, who published it as their own and did not attribute the work to Plaintiff. *Id.* ¶ 29–30.

Plaintiff was also informed by the director of the Emerging Leaders Program, Jacob Michelman, that she was being removed from the program because Defendant Hall had advised the program that he was new and unable to provide the mentoring that was part of the program. *Id.* ¶ 23.  According to Plaintiff, Iglio had been allowed to remain in the program, and no basis was provided by Defendant Hall for agreeing to mentor Iglio while declining to mentor the Plaintiff.  *Id.* ¶¶ 24–25.

Plaintiff further alleges that on September 17, 2017, she attempted to calm down a student who appeared to be injured from an altercation and who was attempting to confront another student; when the student violently resisted, she and five other employees at the school intervened and de–escalated the situation by restraining the student.  *Id.* ¶¶ 33–35.  As a result of this incident, Plaintiff was administratively reassigned on October 3, 2017 to a reassignment center pending a disciplinary hearing, and during her reassignment, the Plaintiff was assigned no duties and lost significant compensation as a result of not receiving session pay.  *Id.* ¶¶ 39–40. Plaintiff argues that the other five employees who intervened, all of whom were younger than she, were neither charged with nor investigated for misconduct, despite also having placed their hands on the student to restrain him.  *Id.* ¶ 37.

Plaintiff was served with disciplinary charges by DOE on February 26, 2018 seeking to revoke her tenure and terminate her employment; on March 7, 2018, she was served a "probable cause" notice seeking to suspend her without pay pending the disciplinary hearing.  *Id.* ¶¶ 40–41. During her time at the reassignment center, Plaintiff applied in October 2017 for a position in District 10 of Queens and was advised by the superintendent, Melanie Mashel, that she would be hired once her charges were resolved and Defendant Hall gave her permission to leave Eagle

Academy; Defendant Hall refused to release the Plaintiff, thus, according to Plaintiff, denying her the opportunity to receive a promotion or even apply for a promotion. *Id.* ¶¶ 42–45.

On May 22, 2018, a hearing officer determined that there was no probable cause to remove Plaintiff from the payroll, and Plaintiff was acquitted of all charges on July 12, 2018, following a hearing. *Id.* ¶¶ 46–47.

Plaintiff was subsequently assigned to teach at John Adams High School in Queens, where she alleges she was assigned the duties of a substitute teacher and that the principal, Daniel Scanlon, refused to give her meaningful work, gave her unfounded negative reviews and false disciplinary charges, and instructed other teachers to surveil her. *Id.* ¶¶ 48–50.

Plaintiff received a "right to sue" letter from the Equal Employment Opportunity Commission on May 6, 2019, and since that time, she alleges that DOE has repeatedly attempted to present baseless disciplinary charges against her, including accusing her of stealing a parking pass while at the reassignment center, accusing her of unspecified "corporal punishment" against a student, and advising her that an investigation (of which the Plaintiff alleges she was not previously made aware) against her concerning a student complaint of race/national origin discrimination from her time at Eagle Academy had resulted in a finding that the complaint was "substantiated." *Id.* ¶¶ 4, 51–55.

Plaintiff contends that the Defendants' actions have stymied the Plaintiff's career advancement, caused her to lose significant compensation and suffer extreme emotional distress, and ultimately caused her to take leave from the Department to teach at a charter school for a lower compensation and inferior benefits. *Id.* ¶¶ 58–59. She also alleges that DOE has engaged in similar conduct of harassment against other teachers, most of whom are over the age of 40, that the Department unsuccessfully attempted to terminate. *Id.* ¶ 60.

### B.  Procedural Background

Plaintiff filed her Complaint on July 26, 2019.  Dkt. No. 1.  On September 19, 2019, Defendants moved to dismiss the Complaint.  Dkt. No. 11.  On October 1, 2019, Plaintiff wrote to the Court indicating that she intended to amend her complaint under Rule 15(a) of the Federal Rules of Civil Procedure.  Dkt. No. 14.  Judge Deborah A. Batts, to whom this case was then assigned, adopted the parties' proposed briefing schedule.  Dkt. No. 15.  On October 10, 2019, Plaintiff filed the First Amended Complaint.  Dkt. No. 16.  Defendants filed their motion to dismiss the FAC on October 31, 2019.  Dkt. No. 17.  Plaintiff filed her opposition on November 21, 2019.  Dkt. No. 20.  Defendants replied on December 6, 2019.  Dkt. No. 22.  This case was then re-assigned to the undersigned on February 20, 2020.

## II.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  A plaintiff is not required to provide "detailed factual allegations" in the complaint.  *Twombly*, 550 U.S. at 555.  To survive a 12(b)(6) motion, however, a plaintiff must nonetheless assert "more than labels and conclusions."  *Id.*  Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Id.*  When applying this standard, a Court must accept the allegations in the complaint as true and draw all reasonable inferences in the non-movant's favor.  *See ATSI Communs, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (Sotomayor, J.).  The Court need

not "accept as true a legal conclusion couched as a factual allegation." *Twombly,* 550 U.S. at 555.

## III.   DISCUSSION

Plaintiff brings suit under federal and state laws for age discrimination and for retaliation. She brings age discrimination and hostile work environment claims against DOE under the Age Discrimination in Employment Act, 29 U.S.C. § 623.  FAC ¶¶ 61–64.  She brings age discrimination and hostile work environment claims against all defendants under the New York State Human Rights Law, N.Y. Exec. Law § 296, and the New York City Human Rights Law, N.Y.C. Admin. Code § 8–107, also asserting that Hall and Macklin for aiding, abetting, and inciting the unlawful acts.  FAC ¶¶  65–71.  She also brings a claim against DOE under 42 U.S.C. § 1983 for developing a policy, practice, and custom of harassing, reprimanding, disciplining, and seeking to revoke the tenure of teachers who DOE unsuccessfully sought to terminate under Education Law 3020–a as well as for investigating discrimination complaints against teachers in a manner lacking due process, and she brings a § 1983 claim against Hall and Macklin for age discrimination, as well.  *Id.* ¶¶ 72–79.  In addition to her discrimination claims, Plaintiff also brings retaliation claims against all Defendants under the NYSHRL, the NYCHRL, and 42 U.S.C. § 1983.  *Id.* ¶¶ 84–94.  And she brings an additional retaliation claim against DOE under the ADEA.  *Id.* ¶¶ 80–83.

### A.  Discrimination Claims

Age discrimination claims under the ADEA, the NYSHRL, and 42 U.S.C. § 1983 are analyzed under the burden-shifting scheme adopted by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See D'Cunha v. Genovese/Eckerd Corp.*, 479 F.3d 193, 194 (2d Cir. 2007); *Boonmalert v. City of New York*, 721 F. App'x 29, 32 (2d Cir.

2018) ("NYSHRL claims are treated the same as ADEA claims . . . ."); *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 575 (S.D.N.Y. 2011) (finding that employment discrimination claims under § 1983 are also analyzed under the *McDonell Douglas* framework and noting that "an employment discrimination plaintiff need not plead a prima facie case of discrimination" (citation omitted)).  Though the NYCHRL has more liberal standards than do its federal and state counterparts, courts in the Second Circuit typically "appl[y] [the] liberal standards [of the NYCHRL] to the basic *McDonnell Douglas* framework."  *Farzan v. Wells Fargo Bank, N.A.*, No. 12-CV-1217 (RJS) (JLC), 2013 WL 6231615, at *15 (S.D.N.Y. Dec. 2, 2013) (collecting cases).  Under the *McDonnell Douglas* framework, a plaintiff must first establish a *prima facie* case of discrimination.  *McDonnell Douglas,* 411 U.S. at 802.  To establish a *prima facie* case of discrimination under the ADEA and the NYSHRL, the plaintiff must show that (1) she belonged to a protected class; (2) she was qualified for the position he held; (3) she suffered a materially adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.  *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (citing *Holcomb v. Iona College,* 521 F.3d 130, 138 (2d Cir. 2008)).  To establish a *prima facie* case under the NYCHRL, meanwhile, the adverse action need not be "material."  *Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 530 (S.D.N.Y. 2015) (quoting *Williams v. Regus Mgmt. Grp., LLC*, 836 F. Supp. 2d 159, 173 (S.D.N.Y. 2011)).  Nonetheless, an NYCHRL plaintiff must adduce evidence supporting an inference of discrimination in order to prevail. *Craven v. City of New York*, No. 19-CV-1486 (JMF), 2020 WL 2765694, at *4 (S.D.N.Y. May 28, 2020).

"To survive a Rule 12(b)(6) motion to dismiss, a plaintiff asserting an employment discrimination complaint under the ADEA must plausibly allege that adverse action was taken

against her by her employer, [] that her age was the 'but-for' cause of the adverse action," and a plaintiff "must supply sufficient factual material, and not just legal conclusions, to push the misconduct alleged in the pleading beyond the realm of the 'conceivable' to the 'plausible.'" *Marcus v. Leviton Mfg. Co., Inc.*, 661 F. App'x 29, 31–32 (2d Cir. 2016) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84, 87 (2d Cir. 2015)).  But "[t]he facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination"; instead, "[t]hey need only give plausible support to a minimal inference of discriminatory motivation." *Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015).  *See also Canada v. Perkins Coie LLP*, No. 18-CV-11635 (JMF), 2020 WL 895705, at *1 (S.D.N.Y. Feb. 18, 2020).

Indeed, "the elements of a *prima facie* case under *McDonnell Douglas* need not be established at the pleading stage," though "these elements nevertheless 'provide an outline of what is necessary to render a plaintiff's employment discrimination claims for relief plausible.'" *Trachtenberg v. Dep't of Educ. of City of New York*, 937 F. Supp. 2d 460, 465 (S.D.N.Y. 2013) (quoting *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 461, No. 11-CV-3743 (JMF), 2013 WL 452913, at *4 (S.D.N.Y. Feb. 7, 2013)); *see also Marcus*, 661 F. App'x at 32 n.2 (noting that *McDonnell Douglas* is an evidentiary standard, not a pleading standard, and is therefore not the relevant standard at the 12(b)(6) stage.).  As a result, courts typically consider the *McDonnell Douglas* elements "in determining whether there is sufficient factual matter in the complaint which, if true, gives Defendant a fair notice of Plaintiff's claim and the grounds on which it rests." *Id.* (citation omitted).  Within that framework, "[i]n the absence of a facially plausible discrimination claim that gives fair notice to a defendant of the acts that form the basis of the claim, dismissal at the pleading stage is warranted." *Id.* (quoting *Williams v. Addie Mae Collins*

8

*Cmty. Serv.,* No. 11-CV-2256 (LAP), 2012 WL 4471544, at *3 (S.D.N.Y. Sept. 27, 2012)).

Defendants raise two arguments in their motion to dismiss Plaintiff's discrimination claims: First, they argue that Plaintiff has not sufficiently alleged an adverse employment action, and second, they argue that she has not pleaded facts to support an inference of discrimination. At this juncture, their arguments are unavailing.

*First*, Plaintiff has sufficiently alleged an adverse employment action. "An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities. Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (quotation marks and citations omitted). Under the NYCHRL, meanwhile, the adverse employment action need not be materially adverse to be actionable. *See, e.g.*, *Varughese v. Mount Sinai Med. Ctr.*, 2015 U.S. Dist. LEXIS 43758 at *104–105 (S.D.N.Y. Mar. 27, 2015).

Here, the First Amended Complaint sets forth a number of different types of conduct that Plaintiff alleges were adverse employment actions: she alleges that (1) she was excessed in July 2017, though she concedes that the excess was rescinded in September 2017, *see* FAC ¶¶ 19, 21; (2) she was removed from the Emerging Leaders Program, ¶¶ 23–25; (3) she was stripped of supervisory and administrative duties, *id.* ¶ 26–28; (4) a student handbook prepared by her was distributed to the school and Macklin, along with another teacher, "published it as their own, making no changes except to rearrange some of the sections," *id.* ¶ 29–30; (5) she was given an excessive workload, *id.* ¶ 31–32; (6) she faced disciplinary charges stemming from the September 17, 2017 incident, *see id.* ¶¶ 33–41; (7) she was denied a transfer opportunity to

9

District 10 of Queens, *id.* ¶¶ 42–45; and (8) she has been marginalized at John Adams High School, *see id.* ¶¶ 48–50.

At least some of these rise to the level of materially adverse actions.  For instance, Plaintiff's allegations regarding her excessive workload rise to the level of materially adverse, at least at this juncture.  *See Vega*, 801 F.3d at 88 ("[T]he assignment of an excessive workload as a result of discriminatory intent can be adverse employment action." (internal quotation marks and citations omitted)).  As in *Vega*, Plaintiff plausibly alleges an excessive workload that is "more disruptive than a mere inconvenience or an alteration of job responsibilities."  *Id.* at 88 (internal quotation marks omitted); *see* FAC ¶¶ 31–32.  Indeed, the allegations in the amended complaint aver the existence of a "disproportionately heavy workload," at least as compared to Plaintiff's younger peers.  *See* FAC ¶¶ 31–32; *Feingold v. New York*, 366 F.3d 138, 152–53 (2d Cir. 2004) (finding that working conditions consisting of "a disproportionately heavy workload" may be an "adverse employment action."); *Craven v. City of New York*, No. 19-CV-1486 (JMF), 2020 WL 2765694, at *5 (S.D.N.Y. May 28, 2020); *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 213 (E.D.N.Y. 2014) (collecting cases).

Along similar lines, Plaintiff's assertions regarding the disciplinary charges stemming from the September 17, 2017 are sufficiently pleaded at this juncture.  While Defendants are correct that "[a] notice of discipline issued against Plaintiff without more, does not qualify as an adverse employment action," Dkt. No. 19 at 8 (citing *Tyson v. Town of Ramapo*, No. 17-CV-4990 (KMK), 2019 WL 1331913, at *14 (S.D.N.Y. Mar. 25, 2019)), that does not end the Court's inquiry.  Defendants concede, for purposes of this motion, that "transfer to a reassignment center along with the allegedly resulting loss of session pay could be considered an adverse employment action under the NYCHRL."  Dkt. No. 19 at 6 n.4.  While their concession

10

does not address the materiality analysis under the other relevant statutes, the Court nonetheless concludes that at this stage the allegations also establish that the disciplinary charges resulted in material adversity, especially because they resulted in the loss of session pay. *See Shapiro v. New York City Dep't of Educ.*, 561 F. Supp. 2d 413, 423 (S.D.N.Y. 2008).

Plaintiff's allegations as to the removal of supervisory and administrative duties are also sufficient to plausibly plead material adversity. *See* FAC ¶ 26–28; *see also* Dkt. No. 20 at 10.  In their reply brief, Defendants claim "the duties that were allegedly removed were not material to Plaintiff's role as a classroom teacher," and that because "the duties she previously handled were outside of her teaching responsibilities," their removal did not result in "significantly diminished material responsibilities." Dkt. No. 22 at 2–3.  Defendants fail to cite any authority, and the Court is aware of none, to support the proposition that because the duties were outside of Plaintiff's teaching responsibilities, their removal cannot rise to the level of material adversity. Here, Plaintiff has pleaded sufficient facts that she had previously had certain supervisory and administrative responsibilities, that these were removed, and that the removal of these responsibilities gave her a less prestigious position within the school and diminished her opportunities for promotion.  FAC ¶ 28.  Courts have found that "a change in duties . . . may be an adverse employment action, if it results in a change in responsibilities so significant as to constitute a setback to the plaintiff's career." *Bowen-Hooks*, 13 F. Supp. 3d at 213; *see also Dietrich v. City of New York*, No. 18-CV-7544 (CM), 2019 WL 2236585, at *7 (S.D.N.Y. May 16, 2019).  And Plaintiff's claim that her opportunities for advancement were hindered by the removal of these duties is further buttressed by her allegations that the duties were assigned to two younger teachers, that at least one of those teachers were also being given opportunities for advancement not afforded to Plaintiff, *see* FAC ¶¶ 24–25, and Plaintiff was told that she would

be required to "assist" one of the younger teachers if the teacher needed Plaintiff's assistance, *see* FAC ¶ 26. Viewing these allegations in the light most favorable to Plaintiff, the Court infers that the removal of these duties contributed to Plaintiff's being placed in a position "materially less conductive to career advancement." *See Dietrich*, 2019 WL 2236585, at *7 (citation omitted).

The Court concludes that complaint plausibly alleges that removal of these duties rose to the level of material adversity. As a result, Defendants' assertion that the Amended Complaint must be dismissed for failing to allege materially adverse actions is unavailing.

*Second*, in their motion to dismiss, Defendants also argue that Plaintiff "has failed to plausibly allege that any of the actions occurred under circumstances giving rise to an inference of age discrimination." Dkt. No. 19 at 11. The Court disagrees. Discriminatory motivation may be shown by "the more favorable treatment of employees not in the protected group." *Littlejohn*, 795 F.3d at 312. And, as already noted, at the motion to dismiss stage, "[t]he facts required by *Iqbal* to be alleged in the complaint . . . need only give plausible support to a *minimal inference* of discriminatory motivation." *Id.* at 311 (emphasis added).

Throughout, the first amended complaint includes allegations that younger employees were treated more favorably and were not subject to the same kind of treatment. For instance, Plaintiff alleges that after Defendants removed the various administrative and supervisory responsibilities that she had previously performed, these responsibilities were assigned to two teachers who are both younger than 40 years old. FAC ¶¶ 26–28. She also alleges that after the September 17, 2017 incident, none of the other employees involved in restraining J.L. were investigated for or charged with misconduct, despite at least two of them—both younger than Plaintiff—also placing their hands on J.L. and restraining him. FAC ¶ 37. And she alleges that while she was given an excessive workload, which included a full teaching load of five classes

with as many as 40 students in one of her classes, "[n]o teachers under 40 years of age were given oversubscribed classes." *Id.* ¶¶ 31–32. These allegations, and the reasonable inferences that can be drawn from them, are sufficient to preclude dismissal at this stage.

Defendants argue, nonetheless, that Plaintiff has failed to state a claim because she did not plead facts to support that the younger teachers were similarly situated to Plaintiff. *See* Dkt. No. 19 at 12–17. As already noted, the burden at the pleading stage is "minimal," and all a Plaintiff must do at this juncture is "show[] facts suggesting an inference of discriminatory motivation." *Littlejohn*, 795 F.3d at 311–12. Drawing all reasonable inferences in Plaintiff's favor, as the Court must, the first amended complaint contains sufficient allegations that the comparators had similar workloads and responsibilities. *See Johnson v. Andy Frain Servs., Inc.*, 638 F. App'x 68, 70 (2d Cir. 2016). The purported comparators are teachers, like Plaintiff. And it is alleged that they have similar responsibilities, including responsibilities that were once Plaintiff's but were reassigned to the younger teachers. *See* FAC ¶ 26. Taken as a whole, these facts are sufficient to suggest an inference of discriminatory motivation. *See Littlejohn*, 795 F.3d at 312. Accordingly, Defendant's motion to dismiss Plaintiff's ADEA discrimination claim is DENIED.

For substantially the same reasons, Defendants' motion to dismiss Plaintiff's § 1983 claims against the Individual Defendants is denied. *See Bermudez v. City of New York*, 783 F. Supp. 2d 560, 575 (S.D.N.Y. 2011) (finding that employment discrimination claims under § 1983 are also analyzed under the *McDonell Douglas* framework and noting that "an employment discrimination plaintiff need not plead a prima facie case of discrimination" (citation omitted)). In addition, Plaintiff's NYSHRL discrimination claim is governed by the same analysis as her ADEA claim. *See Boonmalert v. City of New York*, 721 F. App'x 29, 32 (2d Cir. 2018)

("NYSHRL claims are treated the same as ADEA claims . . . ."). And the NYCHRL has been construed more broadly than federal discrimination claims. *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013). Accordingly, Defendant's motion to dismiss Plaintiff's NYSHRL and NYCHRL discrimination claims, as well as the § 1983 claims against the Individual Defendants, is also DENIED.

### B. Hostile Work Environment Claims

Though the Amended Complaint does not expressly state that Plaintiff asserts hostile work environment claims against the Defendants, Plaintiff avers that she also alleges a hostile work environment claim based on many of the same allegations undergirding her discrimination claims. *See* Dkt. No. 19 at 17–20; Dkt. No. 20 at 18–19.

Under the ADEA, a hostile work environment exists where "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment." *Kassner v. 2nd Ave. Deli., Inc.,* 496 F.3d 229, 240 (2d Cir.2007) (citation omitted). Whether a work environment is actionably hostile "depends on whether a reasonable person would find the work environment to be hostile and whether plaintiffs subjectively perceived it to be so," and Plaintiffs "need not present a list of specific acts" to prevail on a hostile work environment. *Id.* Nonetheless, "[m]inor incidents do not merit relief." *Id.* The ADEA applies the same standards for assessing hostile work environment claims as does Title VII. *See Trachtenberg v. Dep't of Educ. of City of New York*, 937 F. Supp. 2d 460, 472 (S.D.N.Y. 2013). Thus, to establish a hostile work environment claim, a plaintiff ordinarily "must plead facts that would tend to show that the complained of conduct: (1) "is objectively severe or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive"; (2) creates an environment "that the plaintiff subjectively

perceives as hostile or abusive"; and (3) "creates such an environment because of the plaintiff's [protected class]." *Patane v. Clark,* 508 F.3d 106, 113 (2d Cir. 2007) (quoting *Gregory v. Daly,* 243 F.3d 687, 691–92 (2d Cir. 2001)).

In engaging in this analysis, courts analyze the totality of the circumstances. *Id.* (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23 (1993)). Among other things, a court may consider "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." *Id.* (citation omitted). Due to the fact-intensive inquiry of this assessment, the Second Circuit has "repeatedly cautioned against setting the bar too high" in the context of a motion to dismiss such a claim. *Id.* at 113; *see also Trachtenberg*, 937 F. Supp. 2d at 472. To be sure, "[a]t the pleading stage of the case . . . plaintiffs need not plead a *prima facie* case of discrimination based on hostile work environment, so long as they provide in the complaint a short and plain statement of the claim that shows that plaintiffs are entitled to relief and that gives the defendant fair notice of plaintiffs' claim for hostile work environment and the grounds upon which that claim rests." *Kassner*, 496 F.3d at 241. Hostile work environment claims under the ADEA, the NYSHRL, and § 1983 are assessed under the same standards. *See Boonmalert v. City of New York*, 721 F. App'x 29, 33 (2d Cir. 2018). The NYCHRL standard for hostile work environment claims is the same as for discrimination claims; to establish a hostile work environment claim under the NYCHRL, Plaintiff must establish that "she has been treated less well than other employees because of her age." *Berger v. New York City Police Dep't.*, 304 F. Supp. 3d 360, 373 (S.D.N.Y. 2018).

The amended complaint does not plead facts sufficient to support a plausible hostile work environment claim. "[O]ne of the critical inquiries in a hostile environment claim must be the

*environment.* Evidence of a general work atmosphere . . .—as well as evidence of specific hostility directed toward the plaintiff—is an important factor in evaluating the claim." *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997) (citing *Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1415 (10th Cir. 1987) (emphasis in original)). And "[t]o establish a hostile work environment, plaintiffs must prove that the incidents were sufficiently continuous and concerted to be considered pervasive." *Kassner*, 496 F.3d at 241 (citation and internal quotation marks omitted).

Even drawing all reasonable inferences in Plaintiff's favor, the allegations contained in the amended complaint fail to state a plausible hostile work environment claim, falling short of the kinds of conduct that courts have found to be sufficiently pervasive to alter the conditions of the victim's employment. *See Trachtenberg*, 937 F. Supp. 2d at 473 (collecting cases). The allegations in the amended complaint include her having been removed from the Emerging Leaders Program while another teacher was allowed to remain in it, FAC ¶¶ 23–25, duties and responsibilities that were previously hers being reassigned, *id.* ¶¶ 26–28, her student handbook being distributed to the school and Macklin, along with another teacher, "publish[ing] it as their own, making no changes except to rearrange some of the sections," *id.* ¶ 29–30, her having been given an excessive workload compared to other teachers', *id.* 31–32, and the disciplinary charges that were brought against her but not against other teachers who were also involved, *id.* ¶¶ 33–41. But even assuming that an inference of discrimination exists as to these allegations, they would fail to establish the kind of severity and pervasiveness that can amount to an actionable hostile work environment claim. *See, e.g.*, *Littlejohn v. City of New York*, 795 F.3d 297, 321 (2d Cir. 2015) (rejecting allegations that employer made negative statements about plaintiff, was impatient and used harsh tones with plaintiff, distanced herself from plaintiff, required plaintiff

to recreate work, wrongfully reprimanded plaintiff, increased plaintiff's schedule, and was sarcastic to plaintiff as sufficient to state a plausible hostile work environment claim); *Fleming v. MaxMara USA, Inc.,* 371 F. Appx. 115, 119 (2d Cir. 2010) (noting that no hostile work environment existed even where "defendants wrongly excluded [the plaintiff] from meetings, excessively criticized her work, refused to answer work-related questions, arbitrarily imposed duties outside of her responsibilities, threw books, and sent rude emails to her."); *see also Lenart v. Coach Inc.*, 131 F. Supp. 3d 61, 67 (S.D.N.Y. 2015) (finding that allegations regarding others' favorable treatment on the basis of gender did not assert a plausible hostile work environment claim).  Assessing these allegations cumulatively and drawing all reasonable inferences in Plaintiff's favor, the Court nonetheless concludes that the amended complaint does not plead allege the sort of conditions or work environment that could plausibly be deemed "sufficiently pervasive to alter the conditions of [Plaintiff's] employment."  *Trachtenberg*, 937 F. Supp. 2d at 473.  Accordingly, her hostile work environment claims under the ADEA, the NYSHRL, and § 1983 fail.

The different standard for hostile work environment claims under the NYCHRL, however, requires a different result for Plaintiff's NYCHRL claim.  The Second Circuit has explained that "he NYCHRL does not require either materially adverse employment actions or severe and pervasive conduct."  *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 114 (2d Cir. 2013) (citation omitted).  And it has noted that "a focus on unequal treatment based on [a protected category]—regardless of whether the conduct is 'tangible' (like hiring or firing) or not—is in fact the approach that is most faithful to the uniquely broad and remedial purposes of the local statute."  *Id.* (citation omitted).  Thus, a plausible NYCHRL hostile work environment claim need not allege severe or pervasive conduct.  Plaintiff's allegations satisfy

this more permissive threshold.

As such, Defendants' motion to dismiss Plaintiff's ADEA, the NYSHRL, and § 1983 hostile work environment claims is GRANTED, and their motion to dismiss Plaintiff's NYCHRL hostile work environment claims is DENIED.

### C.  Retaliation Claims

Plaintiff also raises retaliation claims under the ADEA, § 1983, the NYSHRL, and the NYCHRL.  The ADEA's anti-retaliation provision forbids an employer from retaliating against an employee for complaining of unlawful age discrimination. *See* 29 U.S.C. § 623(d); *Kessler v. Westchester Cty. Dep't of Soc. Servs.,* 461 F.3d 199, 205 (2d Cir. 2006). A prima facie case of retaliation under the ADEA has four elements: (1) the employee engaged in protected activity, (2) the employer was aware of this activity, (3) the employer took adverse action against the employee, and (4) a causal connection exists between the protected activity and the adverse action. *Id.* at 205–06.  *See also Cerni v. J.P. Morgan Sec. LLC*, 208 F. Supp. 3d 533, 538 (S.D.N.Y. 2016).  A nearly identical provision can be found in Title VII.  *Kessler,* 461 F.3d at 205.  As in the Title VII context, at the motion to dismiss stage for an ADEA retaliation claim, "the allegations in the complaint need only give plausible support to the reduced *prima facie* requirements that arise under *McDonnell Douglas* in the initial phase of . . . litigation." *Littlejohn.*, 795 F.3d 297 at 318.  *See also Hausdorf v. NYC Dep't of Educ.*, No. 17-CV-2115 (PAE) (SN), 2018 WL 1871945, at *8–9 (S.D.N.Y. Jan. 25, 2018), *report and recommendation adopted sub nom. Hausdorf v. New York City Dep't of Educ.*, No. 17-CV-2115 (PAE), 2018 WL 895657 (S.D.N.Y. Feb. 14, 2018) (applying the Title VII analysis to the ADEA context).

Nonetheless, "for a retaliation claim to survive a . . . motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated — or took an adverse employment action — against [her], (2) 'because' [s]he has opposed any unlawful employment practice." *Massaro v. Bd. of Educ. of City Sch. Dist. of City of New York*, 774 F. App'x 18, 21–22 (2d Cir. 2019) (citing *Vega*, 801 F.3d at 90).  In engaging in this analysis, judges should "rely on their 'experience and common sense,' and to consider the context in which a claim is made." *Id.* (quoting *Irrera v. Humpherys*, 859 F.3d 196, 198 (2d Cir. 2017)).  And "[a]s with all retaliation claims, a plaintiff must show that adverse action was taken because of protected activity." *Id.*

The Supreme Court and Second Circuit have defined "adverse action" for purposes of a retaliation claim broadly. A plaintiff need only "show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Kessler*, 461 F.3d at 207 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Crucially, the broadness of this definition means that "the scope of [the] anti-retaliation provision is broader than that of its discriminatory action provision." *Patane v. Clark*, 508 F.3d 106, 116 (2d Cir. 2007); *see also Cerni v. J.P. Morgan Sec. LLC*, 208 F. Supp. 3d 533, 539 (S.D.N.Y. 2016).  Proof of causation, meanwhile, "can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. NYC Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000).

Defendants meaningfully raise two arguments in support of their motion to dismiss the retaliation claims.  First, they argue that Plaintiff has not alleged facts to establish that

Defendants knew of the protected activities—including filing the EEOC charge and filing the initial Complaint in this matter.  Dkt. No. 19 at 21.  Second, they argue that Plaintiff has not alleged any facts to establish either direct or indirect causation.  *See id.* at 21–24.

Defendants' argument as to Defendants' knowledge of the protected activities is unpersuasive.  Defendants correctly point out that some of Plaintiff's arguments in her opposition, including that she was examined pursuant to New York General Municipal Law § 50-h after filing the October 23, 2017 notice of claim, find no support in the facts pleaded in the amended complaint.  *See* Dkt. No. 20 at 20; *see also* Dkt. No. 22 at 8–9.  And while the amended complaint implies that she filed an EEOC charge (insofar as she notes that she exhausted her administrative remedies and received a "right to sue" letter from the EEOC on May 6, 2019, *see* FAC ¶ 4, the amended complaint contains no allegations regarding when she filed the EEOC charge.  Only in the opposition does Plaintiff argue that she filed the EEOC charge in July 2018. *See* Dkt. No. 20 at 20.  Yet Plaintiff did not allege facts related to the filing of the EEOC complaint as a basis for a cause of action in her second amended complaint, and as a result she cannot rely on unalleged facts related to the filing of the EEOC complaint as the basis for stating a retaliation claim.  *See McCarthy*, 482 F.3d at 191.  "[I]t is axiomatic that the Complaint cannot be amended by briefs in opposition to a motion to dismiss."  *Troy v. City of New York*, No. 13-CV-5082 (AJN), 2014 WL 4804479, at *1 (S.D.N.Y. Sept. 25, 2014), *aff'd*, 614 F. App'x 32 (2d Cir. 2015) (citation and internal quotation marks omitted).

But that does not end the inquiry.  In their briefing, Defendants suggest that the only "protected activities" referenced in the amended complaint are the "filing [of] an EEOC charge and the initial Complaint in this action."  Dkt. No. 19 at 21.  But the definition of protected activity can be broader than those activities, including things like "informal protests of

20

discriminatory employment practices," such as "making complaints to management."  *Sumner v. U.S. Postal Serv.,* 899 F.2d 203, 209 (2d Cir. 1990); *see also Mabry v. Neighborhood Def. Serv.*, 769 F. Supp. 2d 381, 397 n.2 (S.D.N.Y. 2011) (citing *Sumner*).  Along those lines, Defendants concede that Plaintiff filed a notice of claim on October 23, 2017, but they argue that the notice "was filed well before the protected activities alleged by Plaintiff (the filing of the EEOC Charge on or around July 16, 2018 and the initial complaint in this matter on July 26, 2019) such that it would give knowledge to Defendants of those protected activities."  Dkt. No. 22 at 8.  They cite no authority, however, for the proposition that a temporal gap between a notice of claim and subsequent actions can be construed to imply a lack of awareness regarding protected activities—or, at least, the likelihood that protected activities would soon follow.  And they cite no authority to rebut the possibility that the notice of claim, which *is* referenced in the Complaint, cannot constitute "protected activity" under the federal and state laws.  Furthermore, they do not allege that Defendants were not aware of the October 23, 2017 notice of claim.  The Court may not draw those inferences in their favor, concluding that, at least at this stage, Plaintiff's pleading that she filed a notice of claim with DOE on October 23, 2017 sufficed to put Defendants on notice regarding the protected activity.

Defendants' arguments regarding causation are similarly unavailing.  As previously noted, causation can be shown either indirectly—usually, though not exclusively, through temporal proximity—or directly, through evidence of retaliatory animus.  *Gordon v. NYC Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000).  The Amended Complaint contains no allegations regarding retaliatory animus or other more explicit forms of animus.  Indeed, in her opposition, Plaintiff does not dispute this point.  *See* Dkt. No. 19 at 22; Dkt. No. 20 at 21–22.  Defendants claim, however, that Plaintiff also fails to allege facts to support an inference of causation

through temporal proximity or other means.  Once again, their analysis is predicated on the notion that the only protected activities at issue were the EEOC charge and the filing of the initial complaint in this matter.  Defendants argue, for instance, that the Court should adopt the inference that the incident and investigation that led to the August 29, 2019 letter relating to a complaint of discrimination lodged against Plaintiff by a student at Eagle Academy "arose sometime before October 2017. . . ."  Dkt. No. 19 at 23.  But given the notice of claim filed on October 23, 2017, and the plausible inference that the investigation was initiated sometime after that—that is, shortly after Plaintiff left Eagle Academy—the Court must draw the reasonable inference in Plaintiff's favor that the investigation that culminated in August 29, 2019 was initiated shortly after Plaintiff's filing of a notice of claim.  Defendants may, of course, identify evidence at a later stage in the litigation to rebut this inference.  But at this stage, their arguments regarding why the claim must be dismissed are insufficient to satisfy their burden under the motion to dismiss standard.

Along similar lines, Defendants do not address the fact that Plaintiff may establish an indirect inference of causation in the retaliation context through the identification of similarly situated comparators.  *See Decinto v. Westchester County Medical Center*, 821 F.2d 111, 115 (2d Cir. 1987).  Instead, in their reply, after Plaintiff made this exact argument, Defendants simply argue that "[w]here temporal proximity is the sole allegation of causal connection, the intervening time period must be very close."  Dkt. No. 22 at 9.  Because Defendants have not addressed the deficiency of the amended complaint as to the existence of comparators in the retaliation context, and because Plaintiff made this argument expressly in her opposition, *see* Dkt. No. 20 at 21, the Court concludes that Plaintiff has alleged sufficient support for a causal connection to survive Defendants' motion to dismiss.  In any event, the Court agrees with

Plaintiff that she has sufficiently pleaded the existence of comparators to survive a motion to dismiss.

Retaliation claims brought under § 1983 are analyzed under the same standard as the ADEA.  *See* Vega, 801 F.3d at 91 (holding that § 1983 and Title VII retaliation claims have the same elements); *Gittens-Bridges v. City of New York*, No. 19-CV-272 (ER), 2020 WL 3100213, at *17 (S.D.N.Y. June 11, 2020) (noting that the standard is the same under § 1983 and the ADEA.  Furthermore, "[a]ge discrimination claims brought under the [NYSHRL] are governed by the same standards as those brought under the ADEA."  *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 467 (2d Cir. 1997) (citing *Spence v. Maryland Casualty Co.,* 995 F.2d 1147, 1158 (2d Cir.1993)).  The NYCHRL, meanwhile, has a more generous pleading standard than either the ADEA or the NYSHRL.  *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013).  Accordingly, Defendants' motion to dismiss Plaintiff's retaliation claims is DENIED.

### D.  *Monell* Claim

Plaintiff also brings a *Monell* claim against the DOE.  "Under the standards of *Monell v. Department of Social Services,* 436 U.S. 658 (1978), a municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality."  *Jones v. Town of East Haven,* 691 F.3d 72, 80 (2d Cir.2012) (some citations omitted).  This limitation applies to both municipalities themselves and other "local government units," such as the DOE.  *Monell,* 436 U.S. at 690; *see, e.g., Segal v. City of New York,* 459 F.3d 207, 219 (2d Cir. 2006).

To demonstrate the existence of a custom or policy, a plaintiff must point to "decisions of a government's lawmakers, . . . acts of its policymaking officials, [or] practices so persistent and

widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 60–61 (2011); *see also Guan N. v. NYC Dep't of Educ.*, No. 11-CV-4299 (AJN), 2014 WL 1275487, at *13 (S.D.N.Y. Mar. 24, 2014).  As a result, the isolated actions of individual employees generally cannot support municipal liability.  *Newton v. City of New York,* 566 F.Supp.2d 256, 271 (S.D.N.Y. 2008). A custom or policy will be deemed to have "caused" a deprivation of federal rights only if the plaintiff "demonstrate[s] that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury."  *Roe v. City of Waterbury,* 542 F.3d 31, 37 (2d Cir. 2008) (quoting *Bd. of Cnty. Comm'rs v. Brown,* 520 U.S. 397, 404 (1997)).  This standard is equivalent to proximate cause.  *Cash v. County of Erie,* 654 F.3d 324, 342 (2d Cir. 2011).

"Whichever theory Plaintiffs offer, 'boilerplate assertions of municipal policy are insufficient to state a claim for *Monell* liability.'"  *Felix v. City of New York*, 344 F. Supp. 3d 644, 653–54 (S.D.N.Y. 2018) (quoting *Bishop v. City of New York*, No. 13-CV-9203 (AJN), 2016 WL 4484245, at *4 (S.D.N.Y. Aug. 18, 2016).  Facts supporting the policy's existence must be pled.  *Id.*  Plaintiff's allegations are lacking in this regard.  In her amended complaint, Plaintiff argues that "Defendant DOE has developed a policy, practice, and custom of harassing, reprimanding, disciplining, and seeking to revoke the tenure of teachers who it has unsuccessfully sought to terminate through the process set forth in 3020-a of the Education Law," and that "[a] teacher who successfully defends himself/herself is nevertheless subjected to marginalization upon return to work, menial assignments, repeated investigation, and additional disciplinary charges until a teacher is fired or resigns from the repeated harassment."  FAC ¶ 77; *see also* FAC ¶ 60 ("Defendant DOE has engaged in similar conduct with other teachers that it is unsuccessful at terminating at tenure hearings, and has developed a policy, practice, and custom

24

of escalating harassment of teachers that it is not able to terminate through the procedures established by Section 3020-a of the Education Law of New York. Most of these teachers are over 40years of age."). But even if true, these assertions are too conclusory to state a plausible claim for relief under *Monell*. *See Ruiz v. City of New York*, No. 14-CV-5231 (VEC), 2015 WL 5146629, at *12 (S.D.N.Y. Sept. 2, 2015) (dismissing *Monell* claim after concluding that plaintiffs' allegation that the misconduct was "repetitive, continuous and systematic" was insufficient); *Fierro v. New York City Dep't of Educ.*, 994 F. Supp. 2d 581, 589 (S.D.N.Y. 2014) (finding too conclusory allegations in the Complaint that "[p]olicymakers, while acting under color of state law, deprived Plaintiff of her right to equal protection ... by treating [her] differently than others similarly situated . . . .," and that "[i]t was the DOE's official custom or practice to discriminate or retaliate against disabled employees.").

The amended complaint also claims that DOE is liable under *Monell* on the basis that "DOE's policy for investigating complaints of discrimination by teachers lacks any due process protections. Under Chancellor's Regulation A-830, which governs claims of discrimination by teachers against students, plaintiff and other teachers can be subjected to corrective action even if they are not informed of the nature of the investigation against them, are not allowed to present evidence in their defense, and given no right to appeal or even refute the charges if they are found to be substantiated." FAC ¶ 78. Here, too, Plaintiff's attempt is deficient. She alleges no facts in support of this theory of liability, and the mere assertions contained in paragraph 78 of the amended complaint are insufficient, even after all inferences are drawn in her favor. *See Perez v. County of Westchester,* 83 F.Supp.2d 435, 438 (S.D.N.Y. 2000) (granting motion to dismiss because "[t]he complaint does not include any facts demonstrating the existence of a policy or custom").

As a result, Defendants' motion to dismiss Plaintiff's *Monell* claim (Count 5) is GRANTED.  Because Plaintiff already amended her complaint after Defendants filed a motion to dismiss on September 19, 2019, *see* Dkt. Nos. 11, 16, and because Plaintiff has not sought to make any amendment requests in the face of Defendants' arguments, *see Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011), the Court's dismissal of this claim is with prejudice.

## IV.    CONCLUSION

For the reasons stated above, Defendants' motion to dismiss the amended complaint is GRANTED with prejudice as to Plaintiff's *Monell* claim and as to Plaintiff's ADEA, NYSHRL, and § 1983 hostile work environment claims, and DENIED as to all other claims.  An initial pretrial conference in this matter will be scheduled by separate order.

This resolves Dkt. Nos. 11 and 17.[1]

SO ORDERED.

Dated:  November 30, 2020
        New York, New York

_____
ALISON J. NATHAN
United States District Judge

---

[1] Defendants' September 19, 2019 motion to dismiss the original complaint, Dkt. No. 11, is denied as moot.

26